UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____ )
                                  )
IN RE FIDELITY ERISA              )      Civil Action No. 13-10222-DJC
FLOAT LITIGATION                  )
                                  )      **ORAL ARGUMENT REQUESTED**
                                  )
_____ )


**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**



Joseph F. Savage, Jr. (BBO# 443030)
Alison V. Douglass (BBO# 646861)
Abigail K. Hemani (BBO # 650721)
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel: 617-570-1000

Brian D. Boyle (*pro hac vice*)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC 20006
T: 202-383-5300


Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 5

I.     PLAINTIFFS' OPPOSITION CANNOT SALVAGE THEIR TIME-BARRED
      CLAIMS. .................................................................................................................... 5

        A.     Plaintiffs Have Not Alleged a Breach of Fiduciary Duty Occurring within
             ERISA's Six-Year Repose Period. ........................................................................ 5

        B.     Plaintiffs Concede Actual Knowledge Sufficient To Establish that Their
             Claims Are Barred by ERISA's Three-Year Statute of Limitations ..................... 12

II.    THE OPPOSITION FAILS TO REBUT THAT PLAINTIFFS LACK
      CONSTITUTIONAL STANDING TO SUE ON BEHALF OF PLANS OTHER
      THAN THEIR OWN. .............................................................................................. 15

III.   THE OPPOSITION FAILS TO SALVAGE PLAINTIFFS' CLAIMS AGAINST
      FMR LLC ................................................................................................................ 18

CONCLUSION ................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Christopher v. SmithKline Beecham Corp.*,
    132 S. Ct. 2156 (2012) ....................................................................................................9

*Corazon v. Aurora Loan Servs., LLC*,
    No. 11-00542, 2011 WL 1740099 (N.D. Cal. May 5, 2011) ...................................19

*Cress v. Wilson*,
    No. 06 Civ. 2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) ...........................16

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) ..................................................................1, 6, 8, 10

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) ....................................................................................19

*Edes v. Verizon Commc'ns, Inc.*,
    417 F.3d 133 (1st Cir. 2005) ...............................................................3, 11, 12, 14

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011) ......................................................................................2

*Fallick v. Nationwide Mut. Life Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) .................................................................................18

*Fuller v. Suntrust Banks, Inc.*,
    744 F.3d 685 (11th Cir. 2014) ...........................................................1, 6, 8, 9, 10

*George v. Kraft Foods Global*,
    814 F. Supp. 2d 832 (N.D. Ill. 2011) ......................................................................8

*Glass Dimensions, Inc. v. State Street Bank & Trust Co.*,
    285 F.R.D. 169 (D. Mass. 2012) ..........................................................................17

*Goldenberg v. Indel*,
    741 F. Supp. 2d 618 (D.N.J. 2010) .......................................................................20

*In re Radioshack Corp. ERISA Litig.*,
    547 F. Supp. 2d 606 (N.D. Tex. 2008) .................................................................16

*In re Tyco Int'l Ltd. Multidistrict Litig.*,
    No. MDL-02-1335, 2004 WL 2903889 (D.N.H. Dec. 2, 2004) ............................20

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,
    76 F.3d 1245 (1st Cir. 1996) ...................................................................................7

*Kling v. Fidelity Mgmt. Trust Co.*,
    323 F. Supp. 2d 132 (D. Mass. 2004) ...................................................................................20

*Kunsman v. Conkright*,
    No. 08-CV-6080L, 2013 WL 5631027 (W.D.N.Y. Oct. 16, 2013)......................................6, 7

*Larson v. Northrop Corp.*,
    21 F.3d 1164 (D.C. Cir. 1994) .............................................................................................9

*Leber v. Citigroup*,
    No. 07-9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011)....................................................8

*Leber v. Citigroup*,
    No. 07-9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010)....................................................8

*Lewis v. City of Chicago*,
    560 U.S. 205 (2010)..........................................................................................................8, 9

*Martin v. Consultants & Adm'rs, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) ...........................................................................................6, 8

*Merrimon v. UNUM Life Ins. Co. of Am.*,
    845 F. Supp. 2d 310 (D. Me. 2012) .......................................................................................2

*Mogel v. UNUM Life Ins. Co. of Am.*,
    547 F.3d 23 (1st Cir. 2008)...................................................................................................2

*Mogel v. UNUM Life Ins. Co. of Am.*,
    540 F. Supp. 2d 258 (D. Mass. 2008) ....................................................................................2

*Morrissey v. Curran*,
    567 F.2d 546 (2d Cir. 1977)..................................................................................................8

*Novella v. Westchester Cnty.*,
    661 F.3d 128 (2d Cir. 2011)................................................................................................12

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).......................................................................................................4, 19

*Pietrangelo v. NUI Corp.*,
    No. Civ. 04-3223, 2005 WL 1703200 (D.N.J. July 20, 2005)................................................19

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    632 F.3d 762 (1st Cir. 2011)........................................................................3, 15, 16, 17, 18

*Riley v. Met. Life Ins. Co.*,
    744 F.3d 241 (1st Cir. 2014)..........................................................................................11, 12

*Salmi v. Sec'y of Health & Human Servs.*,
 774 F.2d 685 (6th Cir.1985) ........................................................................18

*Sun Capital Partners III v. New England Teamsters & Trucking Indu. Pension Fund*,
 724 F.3d 129 (1st Cir. 2013).......................................................................10

*Thompson v. Bd. of Educ. of Romeo Comm. Schs.*,
 709 F.2d 1200 (6th Cir. 1983) ....................................................................18

*Tibble v. Edison Int'l*,
 729 F.3d 1110 (9th Cir. 2013) ..................................................1, 3, 6, 8, 9, 10, 12

*Tussey v. ABB, Inc.*,
 No. 2:06-cv-04305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012) ...........................2, 13, 19

*Tussey v. ABB, Inc.*,
 __ F.3d __, Nos. 12-2056, 12-2060, 12-3794, 12-3875, 2014 WL 1044831 (8th Cir.
 Mar. 19, 2014)...................................................................................2, 5

*United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*,
 960 F.2d 1080 (1st Cir. 1992).....................................................................20

*Vander Luitgaren v. Sun Life Assurance Co. of Canada*,
 966 F.2d 59 (D. Mass. 2012) .......................................................................2

## Statutes

29 U.S.C. § 1113 (ERISA § 413)..................................................................7, 8, 9

## Other Authorities

Br. of Appellant, *Tussey v. Fidelity Mgmt. Trust Co.*, Nos. 12-2060/12-3794, 2013 WL
 874917 (8th Cir. Feb. 26, 2013)..................................................................15

Br. of United States Sec'y of Labor as Amicus Curiae in Supp. of Appellants, *David v.
 Alphin*, No. 11-2181 (4th Cir. Dec. 28, 2011) ...................................................10

Br. of United States Sec'y of Labor as Amicus Curiae in Supp. of Appellants, *Tibble v.
 Edison Int'l*, Nos. 10-56406, 10-56415, 2011 WL 2178417 (9th Cir. May 25, 2011)............10

Department of Labor, Field Assistance Bulletin 2002-3, *available at*
 http://www.dol.gov/ebsa/regs/fab_2002-3.html. ...............................................13

Federal Rule of Civil Procedure 23 ..............................................................18

Federal Rule of Civil Procedure 8 ................................................................4

Federal Rule of Civil Procedure 8(a) ............................................................19

## INTRODUCTION

In their Opposition,[1] Plaintiffs actually concede the one key fact establishing that their claims are stale: that Fidelity implemented the challenged float administration system far more than six years before Plaintiffs filed suit.  *See* Opp'n at 7; *accord* Compl. ¶¶ 6-7, 61, 63.  As three separate Courts of Appeals construing ERISA's statute of repose recently have held, this ends the inquiry:  where a fiduciary has decided upon and implemented a practice more than six years before suit, any challenge to that practice is time-barred.  *See Fuller v. Suntrust Banks, Inc.*, 744 F.3d 685 (11th Cir. 2014); *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013); *Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013), *petition for cert. filed* 82 U.S.L.W. 3284 (U.S. Oct. 30, 2013) (No. 13-550).  Plaintiffs ask this Court to ignore these three circuit court decisions and, instead, to follow (1) briefing submitted by the U.S. Department of Labor ("DOL") in two of those cases, in which the DOL advanced positions that were flatly rejected by the circuit courts, and (2) a Supreme Court case that has nothing to do with ERISA or its statute of repose.  But the statutory text and all of the relevant precedent supports Fidelity's position—and none supports Plaintiffs'.

Plaintiffs also seek to evade the holdings in *Fuller*, *David*, and *Tibble* by mischaracterizing the nature of their claims.  Over and over again, the Opposition describes this dispute as one concerning repeated acts of "misappropriation."  But this is not and never will be a case about recurrent theft—where the defendant commits a discrete, intentional wrong each time he decides to misappropriate funds.  Instead, this is a case about the propriety of a system implemented by Fidelity decades before Plaintiffs filed suit—a system that Fidelity reasonably

---

[1]    Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint ("Opposition" or "Opp'n") [ECF No. 93].  Other terms used herein have the definitions set forth in the Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint ("Mem.") [ECF No. 83].

and consistently has maintained was in compliance with its obligations under ERISA and under

its contracts with the plans.  Although nowhere mentioned in Plaintiffs' Opposition, the Eighth

Circuit has now endorsed Fidelity's position and held that the challenged float system complies

with ERISA:  On March 19, 2014, shortly after Fidelity filed this motion, the Eighth Circuit

reversed the post-trial decision in *Tussey v. ABB, Inc.*, No. 2:06-cv-04305, 2012 WL 1113291

(W.D. Mo. Mar. 31, 2012)—the district court decision that forms the basis for Plaintiffs' claims

in this case.  *See* Compl. ¶¶ 6, 7, 8, 9, 11, 31, 34, 35, 61, 63, 68, 73, 84.  According to the Eighth

Circuit, "Fidelity was not required to credit the Plan with income earned on overnight

investments of float because float was not a Plan asset within the meaning of ERISA."  *Tussey v.*

*ABB, Inc.*, __ F.3d __, Nos. 12-2056, 12-2060, 12-3794, 12-3875, 2014 WL 1044831, at *9 (8th

Cir. Mar. 19, 2014) (citations and alterations omitted).[2]  The fact that the Eighth Circuit shares

Fidelity's interpretation of the law confirms that Fidelity's determination, made decades ago,

about how to structure its float administration system was (at a minimum) reasonable.  So unlike

the theft and embezzlement cases to which Plaintiffs analogize—cases that involved recurrent

discrete wrongs, and that likely would fall within the repose statute's exception for fraud or

---

[2]      Plaintiffs cite *Mogel v. UNUM Life Ins. Co. of Am.*, 547 F.3d 23 (1st Cir. 2008), which they
suggest supports the opposite conclusion, at least with respect to assets in the process of being redeemed.
But *Mogel* involved entirely different circumstances where, instead of sending a life insurance beneficiary
a check with the relevant proceeds, the defendants deposited the proceeds in a "security account" and sent
the beneficiaries a checkbook that they could use to draw down on that account at their discretion.  The
First Circuit concluded that "the euphemistically named 'Security Account,' accompanied with a
checkbook, was no more than an IOU which did not transfer the funds to which the beneficiaries were
entitled out of the plan assets and hence [the defendant] remained a fiduciary with respect to those funds."
*Id.* at 27.  As the First Circuit explained, its holding depended on "[t]he difference between delivery of a
check and a checkbook"—precisely the difference between that case and this one.  *Id.* at 26 (quoting
*Mogel v. UNUM Life Ins. Co. of Am.*, 540 F. Supp. 2d 258, 262 (D. Mass. 2008)).  Moreover, the court
concluded that delivery of the checkbook violated ERISA only because it contravened the specific terms
of the plan at issue.  *Id.*; *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 106-07 (2d Cir. 2011) (rejecting
broad reading of *Mogel* and explaining that case "is better understood as predicated on the fact . . . that
the insurer failed to abide by plan terms requiring it to distribute benefits in lump sums"); *Vander*
*Luitgaren v. Sun Life Assurance Co. of Canada*, 966 F.2d 59, 64-65 (D. Mass. 2012) (similar); *see also*
*Merrimon v. UNUM Life Ins. Co. of Am.*, 845 F. Supp. 2d 310, 318-19 (D. Me. 2012) (explaining that
*Mogel* did not require First Circuit to determine whether funds were plan assets).

concealment—this is precisely the type of case for which Congress determined that, after six years, "the value of repose will trump . . . a plaintiff's right to seek a remedy." *Tibble*, 729 F.3d at 1120 (quoting *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994)).

Plaintiffs also make fatal concessions in response to each of Fidelity's remaining arguments:

***First***, with respect to Fidelity's argument that Plaintiffs' claims are barred by ERISA's three-year statute of limitations, Plaintiffs do not dispute that the plan administrators did not receive any checks, deposits, or other payments of float income from Fidelity. *See* Opp'n at 15 n.24. And, as the First Circuit made clear in *Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005), a plaintiff's "actual knowledge" that he has not received something which he claims he should have received is sufficient to commence the limitations clock. Plaintiffs protest that this case is different from *Edes* because of the "complexity of the underlying factual transaction" at issue here. Opp'n at 15. But, in fact, Plaintiffs' alleged violation is very simple—that Fidelity did not pay float income to the plans. Here, as in *Edes*, Plaintiffs' claims are therefore time-barred.

***Second***, Plaintiffs' Opposition concedes the core premise of Fidelity's standing argument: that the viability of each plan's claims turns on the particular terms of the distinct contracts between Fidelity and that plan. *See* Opp'n at 3, 14, 18. This is precisely the situation in which the First Circuit held that constitutional standing was lacking in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011). Plaintiffs argue that *Nomura* is not binding on this Court because it was not an ERISA case. But the statute at issue is entirely irrelevant where, as here, the question is one of a ***constitutional*** dimension. The First Circuit made clear in *Nomura* that named plaintiffs lack constitutional

standing to bring any type of claims on behalf of a purported class unless there is an "identity of issues" such that "the claims of the named plaintiffs necessarily give them—not just their lawyers—essentially the same incentive to litigate the counterpart claims of the class members." 632 F.3d at 770.  That precedent is binding here.  And because Plaintiffs do not dispute that the success of their claims depends on particularized proof about the terms of the contracts between Fidelity and each plan in the purported class—proof that they have no incentive to offer except as to the contracts between Fidelity and each of their own plans—they necessarily lack constitutional standing under *Nomura* to pursue their class claims.

**_Third_**, Plaintiffs do not dispute that the Complaint does not—and could not—contain a single allegation to suggest that defendant FMR LLC served as a fiduciary to the plans.  Instead, Plaintiffs maintain that their claim against FMR LLC can survive because the Complaint repeatedly makes generic allegations about the "Defendants," and because FMR LLC can be held liable for the acts of its subsidiaries.  But the case law makes clear that generic allegations about "defendants" are insufficient to give rise to a claim against any one defendant under Rule 8—especially where, as here, plaintiffs advance such generic allegations to satisfy "the threshold question [of] . . . whether [a particular defendant] was acting as a fiduciary."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  And the very cases cited by Plaintiffs confirm that, absent justification for piercing the corporate veil, a non-fiduciary parent corporation like FMR LLC cannot be held liable for ERISA fiduciary breaches committed by its subsidiaries.

In short, because Plaintiffs' Opposition fails to refute the numerous defects in their claims, the Complaint should be dismissed in its entirety and with prejudice.

**ARGUMENT**[3]

I.   **PLAINTIFFS' OPPOSITION CANNOT SALVAGE THEIR TIME-BARRED CLAIMS.**

A.   **Plaintiffs Have Not Alleged a Breach of Fiduciary Duty Occurring within ERISA's Six-Year Repose Period.**

In their Opposition, Plaintiffs do not dispute that Fidelity implemented the challenged float administration system far more than six years before they filed suit. *See* Opp'n at 7; *accord* Compl. ¶¶ 6-7, 61, 63. Instead, they suggest that their claims are nonetheless timely because, as a result of this long-standing process, (1) "within the past six years Fidelity repeatedly took retirement plan assets in the form of float, including from the Plans, and used it [sic] for the benefit of itself and others," Opp'n at 7;[4] (2) each such act "was an affirmative and discrete breach," *id.*; and (3) Plaintiffs only seek to "recover funds misappropriated within the past six years," *id*. The problem with Plaintiffs' argument, though, is that it mischaracterizes the nature of Plaintiffs' own claims. This is not a case about a series of discrete decisions made by fiduciaries over the course of years to misappropriate funds. It is a case in which Plaintiffs challenge only one alleged fiduciary decision: the decades-old decision by Fidelity to set up its float administration system so that float income would be earned by, and distributed to, the investment options in which plan participants invested. And, as three Courts of Appeals recently

---

[3]   In their Opposition, Plaintiffs provide a self-serving summary of the relevant facts and allegations that cannot be squared either with their Complaint or with the actual practices involved in this case. *See* Opp'n at 3-5. Rather than rebutting each of the misleading characterizations in that summary, Fidelity refers the Court to the concise description of Fidelity's float administration system provided by the Eighth Circuit in *Tussey*—which this Court may consider, given that Plaintiffs' Complaint expressly incorporates the factual findings in that case. *See* Compl. ¶¶ 6, 11; *Tussey*, 2014 WL 1044831, at *2.

[4]   Although Plaintiffs baldly suggest that this statement is "undisputed," nothing could be further from the truth. *Id.*; *see also* Opp'n at 1 ("Here, no one disputes, at least on the present motion, that Fidelity misappropriated Float from transactions within the past six years."). Fidelity's position—and the ruling of the Eighth Circuit—is that float income is not a "plan asset" and, thus, Fidelity necessarily did not "take" anything that belonged to the plans. *See Tussey*, 2014 WL 1044831, at *10. Moreover, as the Eighth Circuit recognized, "Fidelity did not receive the float or float interest" at issue—instead, it was distributed to the investment options in which plan participants invested. *See id.* at *2.

have held, where, as here, breach of fiduciary duty and prohibited transaction claims challenge such a longstanding practice, they must be filed within six years of the ***decision to implement*** that practice, even if the practice remains in effect during the repose period.  *See Fuller*, 744 F.3d at 700-02; *Tibble*, 729 F.3d at 1119-20; *David*, 704 F.3d at 342-43.

Courts have had little difficulty distinguishing between the fact pattern to which the Opposition alludes—in which a fiduciary makes a series of discrete decisions over the course of years—and the facts actually alleged in the Complaint—concerning an ongoing practice decided upon and implemented years ago.  For example, although the Ninth Circuit held in *Tibble* that plaintiffs' claims were time-barred to the extent that they concerned the offering of investment options added to the plan line-up more than six years before suit, the court allowed plaintiffs' claims to proceed to the extent they concerned separate decisions made during the repose period to offer three additional investment options to the plan.  *See* 729 F.3d at 1119-20, 1126. Similarly, in *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078 (7th Cir. 1992), where plaintiff's claims concerned two separate contracts for services, the first of which predated the limitations period, the court allowed the claims relating to the second contract to proceed, reasoning that, "although the trustees employed similar bidding procedures for the [two] contracts, those procedures, ***rather than being part of a formal policy, were separately considered and decided upon*** with respect to each contract."  *Id*. at 1087-88.  But where, ***as here***, plaintiffs challenge the "continued, uninterrupted application of [a policy or practice]," their claims "are not based on repeated, similar decisions, but on [a] discrete, individual decision" to implement that policy or practice.  *Kunsman v. Conkright*, No. 08-CV-6080L, 2013 WL 5631027, at *9 (W.D.N.Y. Oct. 16, 2013).  And, so long as ***that*** decision was made prior to the repose period, plaintiffs' claims are time-barred.  *Id*.

Moreover, although the Opposition repeatedly uses the term "misappropriation" and analogizes to embezzlement cases, *see* Opp'n at 12—likely in an effort to raise policy concerns—no such concerns are warranted here:  This is not a case about intentional theft or misappropriation, it is a case about a technical dispute between the parties over the definition of the term "plan asset" under ERISA.  If the float income at issue was not a plan asset, then necessarily Fidelity could not have misappropriated it.  The fact that the Eighth Circuit has already ruled in Fidelity's favor on this very issue—and held that the float income did not belong to the plans—suggests that Fidelity's view of the law is, at a minimum, reasonable.  This case therefore involves a dispute over legal interpretation, not "misappropriation."

Nor should this Court be concerned that application of the repose statute in this case might subsequently be invoked to place serial thieves or embezzlers beyond the reach of the courts:  Serial theft is almost invariably a product of repeated, discrete decisions to steal and then to steal again.  And while one might strain to imagine a hypothetical in which intentional theft or embezzlement occurs via some kind of autopilot system set up more than six years before suit, the Court need not concern itself with such a scenario because Congress has provided an exception to the repose period for fraud and other acts of clandestine, intentional wrongdoing, such as the theft and embezzlement cases to which Plaintiffs allude.  *See* Mem. at 15 & n.11; ERISA § 413, 29 U.S.C. § 1113 ("in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation").[5] Thus, despite the Opposition's repeated (mis)use of the term "misappropriation," this case raises

---

[5]      Plaintiffs could not suggest and have not suggested—much less pleaded with the requisite particularity—that § 413's exception for fraud or concealment applies in this case.  *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996) (holding that plaintiffs must plead fraudulent concealment with particularity).

no concerns or considerations that are different than those already addressed by three Courts of Appeals in *David*, *Tibble*, and *Fuller*.

Recognizing that their position finds little support in ERISA case law,[6] Plaintiffs rely heavily on a Supreme Court decision that addressed neither ERISA nor a statute of repose, *Lewis v. City of Chicago*, 560 U.S. 205 (2010). *Lewis* concerned the viability of a disparate impact discrimination claim under Title VII. *Id.* at 208.[7] A disparate impact claim is what it sounds like—a claim based on the continuing impact of a wrongful decision. But, unlike Title VII, ERISA does not permit claims based on a lingering impact resulting from historical conduct. It is therefore not surprising that *Lewis* has never been mentioned in any decision addressing timeliness under ERISA § 413.

---

[6]    The ERISA decisions cited on page 8 of the Opposition are inapposite. *See, e.g.*, *Martin*, 966 F.2d at 1087-88 (holding that, where a contractor was awarded two separate contracts for services and the first contract predated the limitations period, the claims relating to the second contract nevertheless could proceed); *Morrissey v. Curran*, 567 F.2d 546, 547-48 (2d Cir. 1977) (addressing whether plaintiffs could bring a claim for the failure to dispose of an investment that was made before the enactment of ERISA). Indeed, two of the cases that plaintiffs cite actually support Fidelity's position:  In *George v. Kraft Foods Global*, 814 F. Supp. 2d 832 (N.D. Ill. 2011), and *Leber v. Citigroup*, No. 07-9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011), the courts held that, although plaintiffs' claims challenging fund selection were barred by ERISA's six-year statute of repose, because fiduciaries have an ongoing duty "to monitor a plan investment with reasonable diligence and to withdraw the investment if . . . the investment [is] no longer proper for the Plan," plaintiffs' alternative claims that defendants had failed adequately to monitor plan investments during the repose period were timely.  *Leber*, 2011 WL 5428784, at *4 (internal citation and quotation marks omitted); *see also Leber v. Citigroup*, No. 07-9329, 2010 WL 935442, at *7 (S.D.N.Y. Mar. 16, 2010) (holding that, where claims concerned prudence of investment option selections, "the relevant 'last actions' [for purposes of repose statute] were the committee defendants' selections of affiliated funds as investment options for the Plan"); *George*, 814 F. Supp. 2d at 851-52 (holding that "any claim regarding the imprudence of [investment option] selection[s]" made prior to the repose period "is time-barred," but allowing claim to survive to the extent it alleged a violation of defendants' "continuing duty to review plan investments and eliminate imprudent ones") (citation and internal quotation marks omitted)).  Because Plaintiffs do not (and cannot plausibly) allege that Fidelity violated any ongoing "duty to monitor" for changed circumstances, under the reasoning of *George* and *Leber*, Plaintiffs' claims would still be time-barred.

[7]    In *Lewis*, applicants for positions as Chicago firefighters alleged that a test used to group potential applicants into three tiers—"well qualified," "qualified," and "not qualified"—had a racially discriminatory impact.  *Id.* at 210-11.  Although the test had been administered, and the resulting groupings had been decided upon, prior to the limitations period, petitioners claimed that Chicago nonetheless violated Title VII during the limitations period by continuing to make offers exclusively to participants who had previously been placed in the "well qualified" tier.  *Id.* at 211.

As explained by the Supreme Court, the question presented in *Lewis* was not "whether [the] claim . . . [was] timely," but whether conduct during the limitations period that was not intentionally discriminatory could state "a disparate-impact claim *at all*," under the specific statutory language of Title VII. *Id.* at 211 (emphasis in original).[8] The Court reasoned:

> Our charge is to give effect to the law Congress enacted. By enacting [Title VII], Congress allowed claims to be brought against an employer who uses a practice that causes disparate impact, whatever the employer's motives and whether or not he has employed the same practice in the past.

*Id.* at 217 (citing 42 U.S.C. § 2000e-2(k)(1)(A)(i)). In this case, it is the court's "charge to give effect" not to Title VII, but to ERISA's fiduciary duty provisions. *Id.* And, by including in ERISA a six-year statute of repose for fiduciary breaches, Congress made clear that, once six years have passed since the challenged fiduciary decision, the value of repose trumps plaintiffs' right to seek a remedy. *See Tibble*, 729 F.3d at 1120 (quoting *Larson*, 21 F.3d at 1172); *Fuller*, 744 F.3d 700 (quoting *Tibble*, 729 F.3d at 1120).

Plaintiffs also rely heavily on briefs submitted by the DOL in *David* and *Tibble*—briefs presenting arguments that were squarely rejected by each of those courts. *See* Opp'n at 9-10.[9] Plaintiffs assert that the DOL's opinion on this matter is "entitled to considerable weight" under the law. Opp'n at 9 n.14. Not so. *See, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2159 (2012) (holding that agency deference is not appropriate where, for example, the

---

[8] Even if *Lewis* did address the question of timeliness, the Court's decision in that case would not be binding here: The claims at issue in *Lewis* were subject to a 300-day statute of **_limitations_**—not a six-year statute of **_repose_**. Accordingly, the principles of finality and predictability that underlie repose statutes could not have factored into the Court's decision in *Lewis*. *See, e.g.*, *Larson*, 21 F.3d at 1172 (noting that the enactment of ERISA's statute of repose "suggests a judgment by Congress that when six years has passed after a breach or violation, and no fraud or concealment occurs, the value of repose will trump other interests, such as a plaintiff's right to seek a remedy").

[9] Although Plaintiffs also attach to the Declaration of Gregory Y. Porter ("Porter Decl.") [ECF No. 94] an amicus brief submitted by the DOL in *Fuller*, that brief is not referenced in the Opposition and, in fact, does not address the statute of repose.

litigation involves "conduct that occurred well before the [agency's] interpretation was announced"); *Sun Capital Partners III v. New England Teamsters & Trucking Indu. Pension Fund*, 724 F.3d 129, 140-141 (1st Cir. 2013) (same).[10]  Moreover, even the DOL briefs undermine Plaintiffs' arguments:  Although Plaintiffs seek to distinguish *David*, *Tibble*, and *Fuller* on the ground that the allegations in "those cases did not involve affirmative, discrete acts" within the repose period, Opp'n at 12-13, the DOL's briefs confirm just the opposite.  As explained by the DOL in *Tibble*:

> The Plaintiffs allege that, within the statutory period, the defendants repeatedly caused the Plan to pay excessive fees to service providers and repeatedly permitted illegal asset transfers to a plan fiduciary in violation of ERISA's prohibited transaction rules.

Br. of United States Sec'y of Labor as Amicus Curiae in Supp. of Appellants, *Tibble v. Edison Int'l*, Nos. 10-56406, 10-56415, 2011 WL 2178417, at *18 (9th Cir. May 25, 2011), Porter Decl. Ex. 2; *see also* Br. of United States Sec'y of Labor as Amicus Curiae in Supp. of Appellants, *David v. Alphin*, No. 11-2181, at 3 (4th Cir. Dec. 28, 2011), Porter Decl. Ex. 1 ("Plaintiffs contend that Defendants breached their fiduciary obligations each time they caused the Plans to invest [assets] in" the challenged funds, "which occurred repeatedly throughout the six-year period"); *see also Fuller*, 744 F.3d at 689-90 (quoting allegation in complaint that defendants caused the plan "to pay, directly or indirectly, investment management and other fees" during the repose period that the plan would not have paid but for the breach).  In those cases—as in this one—plaintiffs alleged that the challenged fiduciary decision gave rise to practices that continued into the repose period.  And in those cases—as in this one—plaintiffs' breach of

---

[10]     If, in fact, such deference were due, that would only make the consistent rejection of the DOL's position by three separate Courts of Appeals all the more notable.

fiduciary duty and prohibited transaction claims nonetheless were barred by ERISA's six-year statute of repose.

Similarly, Plaintiffs unsuccessfully attempt to distinguish the First Circuit's decisions in *Edes v. Verizon Communications, Inc.*, 417 F.3d 133 (1st Cir. 2005), and *Riley v. Met. Life Ins. Co.*, 744 F.3d 241 (1st Cir. 2014).  Plaintiffs claim that *Edes* is different because the First Circuit found in *Edes* "that the alleged wrongful conduct was a worker classification decision made outside the limitations period and that the present non-receipt of benefits was a lingering effect of that decision."  Opp'n at 12 n.20.  But Plaintiffs provide no explanation for how or why those facts are any different than the facts present here:  Here, as in *Edes*, Plaintiffs challenge a decision made outside of the repose period—the decision about how to set up Fidelity's float administration system—and here, as in *Edes*, because of that decision defendants allegedly continued to shortchange plaintiffs well into the period of repose.  Similarly, Plaintiffs attempt to distinguish the First Circuit's decision in *Riley* by pointing out that the alleged "wrong" in that case was a "one-time miscalculation of ERISA benefits" made prior to the limitations period.  Opp'n at 12.  But, again, because the *Riley* plaintiffs allegedly continued to receive "monthly underpayment[s]" well into the limitations period, the circumstances in *Riley* are no different than those presented here:  In both cases, a decision made prior to the limitations period allegedly resulted in ongoing underpayments to plaintiffs, and in both cases plaintiffs' claims are time-barred.[11]

In short, because it is uncontested that Fidelity implemented the challenged float administration system decades ago, Plaintiffs' claims are barred by ERISA's six-year statute of repose.  Any other outcome "would make hash out of ERISA's limitations period and lead to an

---

[11]     Moreover, if one could avoid a statute of limitations or repose simply by characterizing a defendant's repeated failure to pay amounts a plaintiff claims to be owed as "misappropriation"—as Plaintiffs seek to do here—then *Edes* and *Riley* would have come out differently.

unworkable result" whereby fiduciaries would be obligated to constantly reassess every ongoing practice and every decision previously made—by themselves or by their predecessors. *Tibble*, 729 F.3d at 1119; *see also Novella v. Westchester Cnty.*, 661 F.3d 128, 146 (2d Cir. 2011) (holding that ERISA fiduciaries "ha[ve] no obligation to continually reassess" decisions previously made) (internal quotation marks and citation omitted).  But, as the First Circuit recently has recognized, "[o]ne of ERISA's main purposes is . . . to induc[e] employers to offer benefits by assuring a predictable set of liabilities." *Riley*, 744 F.3d at 248 (original alterations and internal quotations omitted).  And, without a doubt, "[a]llowing [participants] to challenge [decisions made decades ago] on which the statute of limitations has already run by limiting the challenge to recent and future payments [resulting from that age-old decision] would undermine that predictability interest."  *Id.*  This Court should therefore follow the Fourth, Ninth, and Eleventh Circuits and dismiss Plaintiffs' claims on the pleadings for failure to comply with ERISA's six-year statute of repose.

### B.   Plaintiffs Concede Actual Knowledge Sufficient To Establish that Their Claims Are Barred by ERISA's Three-Year Statute of Limitations.

In response to Fidelity's three-year statute of limitations argument, Plaintiffs do not dispute that the plan administrators necessarily have always known the plans were not receiving float income because, in fact, they never received a check, wire, or any other payment from Fidelity:  As in *Edes*, they knew they received nothing ***precisely because*** they received nothing.[12]

Plaintiffs argue that their claims nonetheless are timely because Fidelity has not shown that the plan administrators "even knew that Float [income] was being generated."  Opp'n at 13.  In making this argument, Plaintiffs ask this Court to ignore reality and disregard common sense:

---

[12]      Plaintiffs also do not contest that it is the "actual knowledge" of the plan administrators—and not the named plaintiffs—that matters here. *See* Opp'n at 15 n.24.

As the Complaint concedes, when participants in the plans took money out of their accounts, those redemptions generally were paid by check.[13]  After someone writes a check, it gets mailed, and some time passes.  Once the recipient receives the check, more time passes before the check is deposited, and even more time passes before the check clears.  During all of this passing time, the funds to be transferred pursuant to the check remain in a bank account.  Although, in theory, that account might not bear interest, the notion that a financial institution would let funds linger in an interest-free account is implausible, at best.  The fact that there is float income on checks is therefore common sense.  And, if common sense alone were not enough (which it is), there is more:  Field Assistance Bulletin ("FAB") 2002-3—a DOL bulletin on which Plaintiffs rely throughout their Complaint, *see* Compl. ¶¶ 37, 85, and which was published more than ten years before Plaintiffs filed suit—presents the DOL's position that plan administrators have a fiduciary duty to be aware of float and float income, and that they "should understand that float will be earned on [] disbursements until checks are presented for payment."   DOL, FAB 2002-3 at 2, *available at* http://www.dol.gov/ebsa/regs/fab_2002-3.html.[14]  So, by suggesting that the plan administrators might have had no idea that float income existed, Plaintiffs are asking this Court not only to ignore common sense, but also to ignore the very DOL publication on which they repeatedly rely in their Complaint.

Plaintiffs also suggest that, even if the plan administrators knew more than three years ago that Fidelity was earning float income and the plans were not receiving it, that still would not suffice to establish "actual knowledge" because the plan administrators did not necessarily know

---

[13]    *See Tussey*, 2012 WL 1113291, at *33 ("The disbursement bank account then issues a check to participants.  Participants receive funds after they deposit their checks."); Compl. ¶ 6 (incorporating *Tussey* decision by reference).

[14]    Fidelity does not agree with Plaintiffs' interpretation of 2002-3, nor does it believe that this document is applicable or authoritative here.  But the DOL's publication of this document in 2002 clearly alerted plan administrators to the existence of float and float income.

the specifics of how Fidelity's float administration system worked.  In particular, Plaintiffs claim

that the plan administrators "could not have learned . . . (a) that Fidelity used Float income to

improperly pay bank expenses[], and (b) that Fidelity distributed Float interest pro rata among

various investment funds . . . ."  Opp'n at 15.  But these alleged facts are not "essential facts of

the transaction or conduct constituting the violation," *Edes*, 417 F.3d at 141, because, under

Plaintiffs' theory of the case, regardless of what Fidelity did with the float income, the failure to

distribute that income directly to the plans is all that would be required to prove a violation.  So,

while Plaintiffs are correct that "determining where the distinction between actual and

constructive knowledge lies in a particular case may depend on . . . the complexity of the

underlying factual transaction," Opp'n at 14 (quoting *Edes*, 417 F.3d at 417), the "essential

facts" of the transaction here are not "complex."  Instead, they are just as simple as in *Edes*:

Plaintiffs claim the plans were entitled to something that they knew all along they were not

getting.

    Finally, although Plaintiffs purport to distinguish *Edes* on the facts, their Opposition

actually confirms the similarity between the circumstances presented in *Edes* and those presented

here.  As Plaintiffs note, in *Edes*, the First Circuit held that Plaintiffs had actual knowledge of

their denial of benefits claim more than three years before suit because they "received no

paychecks or benefits from" the defendant.  Opp'n at 15 (quoting *Edes*, 417 F.3d at 135).

Plaintiffs then assert that, "[i]n obvious contrast, Plaintiffs in this case did not receive any

documentation regarding [float income]."  Opp'n at 15 (emphasis omitted).  But this supposed

"contrast" is anything but obvious:  In both cases Plaintiffs necessarily had actual knowledge

more than three years before suit that they did not receive what they claim they were entitled to

***precisely because*** they did not receive it.  If that is not enough to prove actual knowledge, then

14

what is?  As in *Edes*, Plaintiffs' claims are therefore barred by ERISA's three-year statute of limitations.

## II.    THE OPPOSITION FAILS TO REBUT THAT PLAINTIFFS LACK CONSTITUTIONAL STANDING TO SUE ON BEHALF OF PLANS OTHER THAN THEIR OWN.

In response to Fidelity's standing argument, Plaintiffs do not dispute that, even if float income were a plan asset—which it is not—Fidelity's float administration system still would not violate ERISA unless it caused Fidelity to retain assets in excess of the fees "***provided [for] in its trust agreements***" with each of the plans.  Compl. ¶ 51 (emphasis added).  Indeed, Plaintiffs continue to emphasize the centrality of the terms of each trust agreement to their case.  *See* Opp'n at 3 ("The Plans' Trust Agreements generally provided that FMTC would charge only three types of fees to the Plans . . . .  Float is not one of those fees."); *id.* at 14 ("The Trust Agreements contained no disclosure or language that included Float income as a permissible fee;"); *id.* at 18 ("Discovery will establish whether the terms of the relevant contracts and trust documents are sufficiently similar for purposes of Float to be decided on a class basis.").[15]  This is precisely the situation in which the First Circuit found constitutional standing lacking in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011):  Because the named plaintiffs have no "incentive to litigate" over the terms,

---

[15]    Although the mere fact that plaintiffs will have to offer particularized proof concerning each of the separate contracts governing Fidelity's relationship with each of the thousands of plans in the purported class is enough, in and of itself, to defeat class standing, Plaintiffs also do not dispute that, on the face of the Complaint, it is clear that the relevant provisions of these agreements are not uniform from one plan to the next.  *See* Mem. at  27-28.  Moreover, the facts in the *Tussey* case makes clear that, at least for some plans, the relevant trust agreement does, in fact, authorize the use of plan assets to cover precisely the type of bank fees at issue here.  *See* Appellant Br., *Tussey*, 2013 WL 874917, at *8-9 (quoting ABB Trust Agreement §§ 4(k)(vii), 6) ("All expenses of the Trustee relating directly to the acquisition and disposition of investments constituting part of the Trust . . . shall be a charge against and paid from the appropriate Plan participants' accounts" and (2) authorizing Fidelity to "pay . . . reasonable expenses and compensation from the Trust" for "legal, accounting, clerical, and other assistance" not funded by ABB).

meaning, scope, applicability, or intent behind the provisions of the trust agreements between Fidelity and the thousands of plans with which they have no affiliation, under *Nomura*, named Plaintiffs plainly lack constitutional standing to bring their class claims.

Plaintiffs protest that *Nomura* is not an ERISA case. *See* Opp'n at 18. They contend that, whatever the law outside of the ERISA context, "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." Opp'n at 17 (quoting *Fallick v. Nationwide Mut. Life Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)); *id*. at 17 n.26. But Plaintiffs' argument is a straw man: Fidelity does not dispute that participants in an ERISA plan may "represent a class of participants in numerous plans other than his own" where the asserted claims turn on facts that are uniform across all plans. *Id*. So, to take examples from the cases Plaintiffs cite, courts have found an ***identity*** of issues—and, thus, class standing, where:

- Defendants allegedly breached their fiduciary duties by continuing to allow several plans ***sponsored by the same employer to invest in employer stock***, despite their knowledge that the stock was about to decline precipitously. *In re Radioshack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 611 (N.D. Tex. 2008).

- Defendants allegedly breached their fiduciary duties by underfunding three defined benefit plans whose assets were held ***collectively*** in a commingled unitary trust. *Cress v. Wilson*, No. 06 Civ. 2717, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007).

But where, as here, plaintiffs purport to represent thousands of different plans sponsored by different employers, and proof of each plan's claims is dependent on the specific terms of the discrete contracts that defendants entered into separately with each plan (contracts that Plaintiffs concede are not uniform from one plan to the next, *see* Opp'n at 3, 18), *Nomura* dictates that the named plaintiffs lack standing to pursue claims on behalf of any plans other than their own.[16]

---

[16]    Indeed, this was precisely the situation in *Nomura*, where the First Circuit held that plaintiffs lacked constitutional standing to raise claims concerning trusts in which they had not invested because

16

Moreover, because the holding of *Nomura* concerns the outer limits of what the **_Constitution_** allows, it applies just as much to an ERISA case as to any other.  Plaintiffs argue that *Nomura* turned on an analysis of statutory standing under the securities laws—not on the requirements of Article III—and that it therefore has no applicability to an ERISA case like this one.  *See* Opp'n at 18.[17]  Plaintiffs' argument is dead wrong.  The First Circuit made abundantly clear in *Nomura* that its holding rested on the requirements of Article III.  *See Nomura*, 632 F.3d at 768 (calling Article III standing the "primar[y] issue"); *id.* at 769-70 (repeatedly discussing Article III principles).  As the Court explained:  "Article III creates some outer limit based on the incentives of the named plaintiffs to adequately litigate issues of importance to [the class]."  *Id.* at 770.  The Court went on to describe "the substance of the Article III concern" as whether "the claims of the named plaintiffs necessarily give them—and not just their lawyers—essentially the same incentive to litigate the counterpart claims of class members."  *Id.*  And it held that the claims in *Nomura* failed to give rise to class standing because "the necessary identity of issues and alignment of incentives [was] not present."  *Id.* at 771.  Throughout this discussion, the Court repeatedly mentioned Article III and cited Article III cases—cases that did not involve the securities laws.  The Court never mentioned the issue of statutory standing.  The First Circuit's decision in *Nomura* thus unquestionably addressed the constitutional limits on class standing.[18]

---

they had no incentive to prove that Nomura's conduct rendered the offering documents for each of those trusts false or misleading.

[17]     Additionally, Plaintiffs note that "[t]he *Nomura* decision [] rested in part on the lack of privity between the named plaintiffs and certain defendants."  *See* Opp'n at 18 n.27 (citing *Nomura*, 632 F.3d at 771).  But this fact is a red herring because the portion of the *Nomura* decision on which Fidelity relies concerns the question of whether plaintiffs had standing to pursue class claims against those defendants for whom there were no privity concerns.  *Nomura*, 632 F.3d at 770-71.

[18]     Plaintiffs point to the district court's decision in *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169 (D. Mass. 2012), in which the court declined to apply the First Circuit's reasoning in *Nomura* to an ERISA breach of fiduciary duty claim because, in the court's view, *Nomura*'s "holding rests on statutory, not constitutional grounds."  *Glass Dimensions*, 285 F.R.D. at 175.  For the reasons discussed, this conclusion is plainly wrong.

Unable to distinguish the First Circuit's binding decision in *Nomura*, Plaintiffs spend more than a full page discussing the Sixth Circuit's non-binding decision in *Fallick v. Nationwide Mut. Life Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). In *Fallick*, the Sixth Circuit held that, once a named plaintiff establishes individual standing, whether or not he will be able to represent the putative class "depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." 162 F.3d at 423. But, of course, *Fallick* is not the law in the First Circuit—*Nomura* is the law here.[19] And *Nomura* requires this Court to address class standing issues prior to Rule 23 proceedings, and to dismiss class claims on the pleadings where, as here, it is clear from the face of the complaint that the named plaintiffs lack the requisite "incentive to litigate" claims belonging to other members of the putative class. *Id*. at 770.

## III.   THE OPPOSITION FAILS TO SALVAGE PLAINTIFFS' CLAIMS AGAINST FMR LLC.

In response to Fidelity's argument that the claims against Defendant FMR LLC should be dismissed, Plaintiffs do not dispute that, although the Complaint alleges that "Defendant FMTC is a fiduciary of the Plan[s]," "Defendant FIIOC is a fiduciary of the Plan[s]," and "Defendant FMRC is a fiduciary of the Plan[s]," Compl. ¶¶ 33-35, it does not (and could not) make even such a superficial allegation of fiduciary status for FMR LLC. Instead, Plaintiffs direct the Court to allegations in the Complaint in which Plaintiffs contend, generically, that "Defendants"

---

[19]   In fact, it is unclear whether *Fallick* is good law even in the Sixth Circuit. *Fallick* fails to address a previous decision in which the Sixth Circuit ruled that "nothing in Fed. R. Civ. P. 23 alters" the constitutional "prerequisite" of standing and then engaged in a full constitutional standing analysis to conclude that the named plaintiff teachers lacked standing to sue a defendant class of school boards by which they were not employed. *Thompson v. Bd. of Educ. of Romeo Comm. Schs.*, 709 F.2d 1200, 1204-05 (6th Cir. 1983); *see also Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985) ("A panel of this Court cannot overrule the decision of another panel."). Moreover, although several of the ERISA cases cited by Plaintiffs follow the Sixth Circuit's decision in *Fallick*, *see* Opp'n at 17 n.26 (collecting cases), those cases either are from outside the First Circuit or predate *Nomura* and, thus, are equally irrelevant to this Court's analysis.

"engaged in the acts that comprised the alleged wrongful conduct."  Opp'n at 19.  According to

Plaintiffs, because the term Defendants "includes FMR [LLC]," these allegations are sufficient to

establish FMR LLC's status as a fiduciary.  *Id.*  There are two problems with Plaintiffs' position.

First, generic allegations about a collective group of defendants can never be sufficient to

establish what the Supreme Court has labelled the "threshold question" in "every case charging

breach of ERISA fiduciary duty"—namely, "whether [a particular defendant] was acting as a

fiduciary . . . when taking the action subject to complaint."  *Pegram*, 530 U.S. at 226.[20]  Second,

even if such generic allegations of fiduciary status could suffice to state a claim, Plaintiffs do not

actually point to any allegations in which they generically allege that all Defendants (including

FMR LLC) had fiduciary obligations to the plans.  To the contrary, they chose to plead fiduciary

status individually for each of the three other defendants, but did not include (and, in good faith,

could not have included) similar allegations against FMR LLC.  *See* Compl. ¶¶ 33-35.[21]

    Plaintiffs' second argument—that FMR LLC can be held liable under ERISA for the

conduct of its subsidiaries—is equally baseless.  Plaintiffs assert that "the prevailing view is that

a corporation may be held liable [under ERISA] for the fiduciary breaches of its . . .

---

[20]    *See also Corazon v. Aurora Loan Servs., LLC*, No. 11-00542, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) (stating that undifferentiated allegations about "Defendants" do not satisfy Rule 8(a)); *Pietrangelo v. NUI Corp.*, No. Civ. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) (dismissing complaint that lumped all defendants together and "accuse[d] every defendant of breaching all of the asserted fiduciary duties").

[21]    Plaintiffs complain about "the difficulty of ascertaining the responsible corporate entities from a panoply of affiliated companies at the pleading stage."  Opp'n at 19-20.  But, of course, plaintiffs have plenty of information about which Fidelity entities were responsible for float administration from the findings of fact in *Tussey*—the case on which they rely, and in which FMR LLC was not even included as a defendant.  *See Tussey*, 2012 WL 1113291.  Additionally, the trust agreements make perfectly clear which Fidelity entities were engaged to service the funds.  If FMR LLC were a party to any of those agreements, Plaintiffs likely would have pleaded FMR LLC's fiduciary status.  But, because FMR LLC is not a party to those agreements, Plaintiffs have no reasonable basis for naming FMR LLC as a defendant in this case.  *See, e.g., DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome.  Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.").

subsidiaries." Opp'n at 20. But the cases they cite stand for no such thing. To the contrary, all three of Plaintiffs' cases simply set forth the uncontroversial proposition that a corporation acts through its employees and, thus, that an employee's conduct can be attributed to his or her employer for purposes of an ERISA claim.[22] Moreover, Plaintiffs' own cases actually undermine their position: As the court explained in *In re Tyco*, 2004 WL 2903889, at *7, a parent corporation ***cannot*** be held vicariously liable under ERISA for the fiduciary breaches of its subsidiaries absent a basis for piercing the corporate veil. *See also United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1092-93 (1st Cir. 1992) (holding that courts may not "disregard corporate separateness in an ERISA-related dispute" absent "lack of corporate independence, fraudulent intent, and manifest injustice"). And because the Complaint contains no allegations whatsoever that would justify veil-piercing, Plaintiffs' claims against FMR LLC must be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' initial memorandum of law in support of this motion, the Complaint should be dismissed in its entirety and with prejudice.

---

[22]   *See Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 146 (D. Mass. 2004) (holding that ERISA does not "eliminate the vicarious liability of a corporation for the acts of its employees or agents"); *In re Tyco Int'l Ltd. Multidistrict Litig.*, No. MDL-02-1335, 2004 WL 2903889, at *5 (D.N.H. Dec. 2, 2004) (recognizing that "an employer can be held vicariously liable [under ERISA] for the fiduciary breaches of its employees under certain circumstances"); *Goldenberg v. Indel*, 741 F. Supp. 2d 618, 628 (D.N.J. 2010) (holding that "employer-employee agency applies to ERISA fiduciary duties" because "without some theory of agency, an investment corporation would never be held liable for breaches of fiduciary duty since corporate liability is always ultimately a question of imputing liability to the entity based on the conduct of a human being").

Dated:  May 1, 2014                     Respectfully Submitted,


                                        FMR LLC, FIDELITY MANAGEMENT
                                        TRUST COMPANY, FIDELITY MANAGEMENT
                                        AND RESEARCH COMPANY, AND FIDELITY
                                        INVESTMENTS INSTITUTIONAL
                                        OPERATIONS COMPANY, INC.

                                        By their attorneys,

                                        /s/ Alison V. Douglass_____
                                        Joseph F. Savage, Jr. (BBO# 443030)
                                        Alison V. Douglass (BBO# 646861)
                                        Abigail K. Hemani (BBO # 650721)
                                        Goodwin Procter LLP
                                        Exchange Place
                                        53 State Street
                                        Boston, MA 02109
                                        T: 617-570-1000
                                        F: 617-523-1231
                                        JSavage@goodwinprocter.com
                                        ADouglass@goodwinprocter.com
                                        AHemani@goodwinprocter.com


                                        Brian D. Boyle (*pro hac vice*)
                                        O'Melveny & Myers LLP
                                        1625 Eye Street, N.W.
                                        Washington, DC 20006
                                        T: 202-383-5300
                                        F: 202-383-5414
                                        bboyle@omm.com

## **CERTIFICATE OF SERVICE**

I, Alison V. Douglass, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 1, 2014.

/s/ Alison V. Douglass