# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE FIDELITY ERISA FLOAT LITIGATION | CIVIL ACTION NO. 13-10222-DJC<br><br>**Leave to File Granted September 24, 2014** |

## SECOND AMENDED CONSOLIDATED COMPLAINT

## I.   INTRODUCTION

1.      This Consolidated Complaint concerns fiduciary self-dealing that violates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

2.      The Plaintiffs bring this class action on behalf of the ERISA retirement plans in which they are or have been participants or fiduciaries to recover investment earnings wrongfully taken by the Defendants from Plaintiffs' retirement plans and a host of similarly-situated ERISA retirement plans (collectively, "Plans").

3.      The Defendants (referred to collectively herein as "Fidelity" or "Defendants") caused certain of the Plans' assets to be deposited on an interim basis in accounts ("Deposit Accounts") before Defendants disbursed monies as directed by the Plans. Plan funds in the Deposit Accounts earned interest, generally via investment in overnight securities. This interest is often referred to as "float." Float is a plan asset because the principal from which it is earned is a plan asset. Fidelity was the trustee for the Plans and their assets. It exercised authority or control over the investment of the Plans' assets in Deposit Accounts and over the float earned thereon. Accordingly, Fidelity was a fiduciary for the Plans with respect to float. As a fiduciary, Fidelity was prohibited from dealing with float for itself or for the benefit of another and was

required to deal with float with prudence and unflagging loyalty to the Plans. Fidelity instead used the float for itself and for the benefit of others.

4. First, Fidelity misappropriated the Plans' float to pay trust and record-keeping and/or banking fees that Fidelity was contractually obligated to pay. Each time Fidelity used the Plans' float to pay these fees, Fidelity used the Plans' assets for its own benefit. Fidelity engaged in repeated self-dealing transactions and breaches of duty in violation of ERISA §§ 404 and 406 and Department of Labor Regulations, 29 C.F.R. § 2550.

5. Second, Fidelity misappropriated the Plans' float and gave it to other Fidelity clients. Each time Fidelity gave the Plans' float to its other customers, Fidelity used the Plans' assets for the benefit of its other customers. Fidelity engaged in repeated transactions for the benefit of others and breaches of duty in violation ERISA §§ 404 and 406 and Department of Labor Regulations, 29 C.F.R. § 2550.

6. Plaintiffs bring this action to recover the float interest Fidelity improperly took from Plaintiffs and the members of the proposed nationwide class in violation of ERISA.

## II.   JURISDICTION AND VENUE

7. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331(e)(1) and ERISA § 502(e)(1). The claims asserted here are brought as a class action under Federal Rule of Civil Procedure 23.

8. Venue is proper in this district pursuant to ERISA § 502(e)(2) because this District is where the breaches took place and where one or more of the Defendants reside or may be found.

### III.   THE PARTIES

**A.   The Plaintiffs**

9.      Timothy M. Kelley ("Kelley") is a former participant in both the Avanade, Inc. 401(k) Retirement Plan ("Avanade Plan") and the Hewlett-Packard Company 401(k) Plan ("HP Plan"). Kelley resides in North Dakota. Kelley was an active participant in the Avanade Plan from approximately February 2008 to July 2010. He was an active participant in the HP Plan from approximately February 2007 to January 2008.

10.     Jamie A. Fine ("Fine") is and has been a participant in the Delta Airlines 401(k) Plan ("Delta Plan") since on or about 1997. Fine resides in Georgia.

11.     Patricia Boudreau ("Boudreau") is a participant in the Bank of America 401(k) Plan ("BOA Plan"). Boudreau resides in Massachusetts. Boudreau was an active participant in the BOA Plan from 2005 until June 30, 2013.

12.     Alex Gray ("Gray") is a participant in the EMC Corporation 401(k) Plan ("EMC Plan"). Gray resides in Massachusetts. Gray has been an active participant in the EMC Plan since 2008.

13.     Bobby Negron ("Negron") is a participant in the Safety Insurance Company 401(k) Plan ("Safety Insurance Plan"). Negron resides in Massachusetts. Negron has been an active participant in the Safety Insurance Plan since 2006.

14.     Korine Brown ("Brown") is a participant in the General Motors Personal Savings Plan ("GM Plan"). Brown resides in New York State. She has been an active participant in the GM Plan since 2007.

15.     Columbia Air Services, Inc. ("Columbia") is a Connecticut corporation with its principal place of business in Groton, Connecticut. Columbia has at all material times been the

sponsor and administrator for the Columbia Group of Companies 401(k) Retirement Savings Plan ("Columbia Plan").

**B.**     **The Defendants**

16.     Fidelity Management Trust Company ("FMTC") is a Massachusetts corporation with its headquarters in Boston, Massachusetts. FMTC is a trust company and manages assets for over 500 institutional clients worldwide, with more than $175.5 billion in trusts and other assets under management as of June 30, 2012. As trustee, FMTC is, by definition, a fiduciary to the Plans.

17.     Fidelity Management & Research Company ("FMRC") is an affiliate of FMTC. FMRC is a registered investment company that serves as the leading asset manager and investment advisor for the Plans' investment accounts. FMRC has three divisions, two of which are located in Boston, Massachusetts. FMRC has over one trillion dollars under its administration and management.

18.     Fidelity Investments Institutional Operations Company, Inc. ("FIIOC") is an affiliate of FMTC and FMRC. FIIOC provides trust services, recordkeeping and information management services for employee benefit plans. FIIOC serves as an agent to FMTC and is located in Boston, Massachusetts.

**IV.     THE PLANS**

19.     The Plans are employee benefit plans within the meaning of ERISA §§ 3(3) and 3(2)(A). The purpose of the Plans is to provide retirement benefits to Plan Participants.

20.     The Plans are "defined contribution" or "individual account" plans within the meaning of ERISA § 3(34), in that they provide for individual accounts for each Participant and for benefits based solely on the amount contributed to those accounts plus any income, expenses,

gains and losses, and forfeitures of accounts of other Participants which may be allocated to such Participant's account. Consequently, retirement benefits provided by the Plans are based solely on the amounts allocated to each individual's account. The Plans, then, are typical 401(k) retirement plans similar to those offered by employers throughout the country.

21.     A number of services may be provided to defined contribution retirement plans in order for them to operate. Such services include investment management, consulting and financial advice concerning investment selection and monitoring, record-keeping to keep track of employee contributions and accounts, custodial or trust services to hold and invest plan assets, and communications to Participants to advise and educate Participants regarding the operation of the plan and investment of plan assets.

22.     The Plans entered into Trust Agreements with Fidelity to establish trusts to hold Plan assets.

23.     Under the Trust Agreements, FMTC agreed to accept all of the duties of trustee. In particular, FMTC agreed to open and maintain a trust account for each Plan and an individual trust account for each participant in the Plans; accept contributions on behalf of participants in the Plans; and invest and reinvest Plan assets and hold Plan assets including assets in the Deposit Accounts and float earned thereon, all in accordance with the terms of the Plans.

24.      Fidelity's Trust Agreements with the Plans provide that FMTC would charge only three types of fees to the Plans: (1) an asset-based fee based on a percentage of plan assets held in a particular Plan investment, (2) an administrative fee that is a fixed dollar rate per plan participant (also known as a "hard-dollar" payment), and (3) fees for individual participant services such as loans. Defendants were not authorized to receive any other consideration for fees and expenses for managing the Deposit Accounts or other Plan assets.

25.     The Plans' Trust Agreements are substantially the same in all material respects:

- All Trust Agreements specified that FMTC would hold the assets of the trust funds, including in Deposit Accounts, for the exclusive benefit of plan participants and beneficiaries, and for the defraying of reasonable plan expenses.

- All Trust Agreements specified that FMTC was acting as a directed trustee of the Plan Administrator.

- All Trust Agreements gave FMTC broad powers to invest, retain, sell, exchange, or otherwise dispose of any of the assets of the trust fund, including funds in the Deposit Accounts.

- All Trust Agreements detailed the services that FMTC would perform and specified the fees that FMTC would charge for the services it provided.

- None of the Trust Agreements included any language that includes float income among permissible fees or otherwise authorizes Defendants to appropriate float income for their own or any other purposes.

## V.     DEFENDANTS' FIDUCIARY STATUS

26.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i).

6

27.     Defendant FMTC is a fiduciary of the Plan. As the Trustee, FMTC had "authority or control respecting management or disposition of [plan] assets." Based on a review of the Columbia Plan, a form or prototype plan used by Fidelity for hundreds of 401K plan accounts, the Trust Agreements provide that FMTC had the duty and/or power, among other things, to "open and maintain a trust account for the Plan," "to accept and hold" in the trust account participant contributions, "to invest" the Trust Fund in Permissible Investments, to "retain uninvested cash," including in Deposit Accounts, "to sell, lease, convert, redeem, exchange, or otherwise dispose of all or any part of the assets constituting the Trust Fund," to "employ such agents and counsel as may be reasonably necessary in collecting, managing, administering, investing, distributing and protecting the Trust Fund or the assets thereof and to pay them reasonable compensation," and "generally to exercise any of the powers of an owner with respect to all or any part of the Trust Fund." The Trust Agreements also stated that "[t]he Trustee . . . and *any other fiduciary* shall discharge their duties under the Plan and this Trust Agreement solely in the interests of Participants and their Beneficiaries in accordance with the requirements of ERISA" (emphasis added). FMTC, as principal for its agent FIIOC, was and is a fiduciary concerning the violations alleged below.

28.     Defendant FIIOC is a fiduciary of the Plan. As the agent for FMTC, FIIOC established, managed and maintained the Deposit Accounts, including the Redemption Account described herein, and used its discretionary authority and control to transfer Plan Assets to the REPO account and use float income to pay FMTC's bank fees and/or benefit investment accounts not held exclusively by the Plan. Accordingly, it had authority or control over the management or disposition of Plan Assets.

29.     Defendant FMRC is a fiduciary of the Plan by virtue of its discretionary management and control over Plan Assets transferred to the FICASH program. FMRC exercised discretion in choosing securities as overnight investments for plan assets.

## VI.     DEFENDANTS' FIDUCIARY DUTIES

30.     ERISA imposes on all plan fiduciaries the duty of loyalty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." ERISA § 404(a)(1).

31.     ERISA § 406(b)(1) prohibits a fiduciary from dealing with assets of a plan for its own interest or account. The Department of Labor has indicated, in both Advisory Opinion 93-24A and in Field Assistance Bulletin 2002-3, that a trustee's use of float income for its own benefit constitutes a prohibited transaction unless the trustee (1) disclosed the float to the independent plan fiduciary at the time the trustee was retained, (2) openly negotiated with the independent plan fiduciary to retain float income as part of its overall compensation, and (3) was not in a position to affect the amount of its float compensation, as it would, for example, if it had "broad discretion over the duration of the float." FAB 2002-3. In particular, even if there is a float-related disclosure, the service provider may not use the float to cause "a plan to pay additional fees to the provider." *Id.* The Department of Labor's advisory opinions and field assistance bulletins are publicly available documents designed to provide guidance to the regulated ERISA community, including ERISA fiduciaries such as the Defendants, and the Defendants knew or should have known of these requirements.

8

## VII.   DEFENDANTS' VIOLATIONS OF ERISA

32.     The Defendants' ERISA violations arise from (1) their practice of appropriating float earned on Plan assets to pay banking fees that Fidelity was required to pay, and (2) their practice of misappropriating float income for the use of clients other than the participants in the Plans. These processes are further described below.

33.     During the Class Period, when Plan Participants withdrew funds from their Plan accounts, disbursements of Plan assets were triggered. Such disbursements are paid as a lump sum unless a plan participant has entered retirement and is receiving regular, periodic retirement payments from the plan. The withdrawals were received by Participants after the following general sequence:

    a.    The day after withdrawals were requested by Participants and investments were "sold," funds moved from the relevant investment option account into a redemption bank account. The redemption bank account was held at Deutsche Bank, and was registered to Fidelity Operations.

    b.    Later that same day, the IRS was paid on any withdrawals that were taxable, and any remaining balances were transferred to the REPO Account.

    c.    Once funds reached the REPO Account, they were immediately transferred to FICASH, an interest bearing account owned and controlled by Fidelity.

    d.    The following day, after remaining with FICASH overnight, the principal of those funds was transferred back to the redemption bank account. The interest earned in the FICASH account was not transferred back to the REPO account as alleged below.

    e.    Depending on state tax remittance schedules, state taxes were then paid.

    f.    Either on or after the same day that the redemption bank account (the "Redemption Account") received funds back from the FICASH account, withdrawn funds were electronically disbursed from the redemption bank account to Participants who were able to receive electronic disbursements.

g.      For Participants who did not receive an electronic disbursement, withdrawn funds were transferred from the redemption bank account to an interest bearing disbursement bank account at Deutsche Bank owned and controlled by Fidelity. The disbursement bank account then issued a check to those Participants in the amount of the withdrawal but not including any interest. Participants receive the funds after they cash or deposit their checks.

h.      Fidelity retained some portion of the float income generated during the disbursement process for itself, and the remainder was credited to mutual funds – not to the Plans and their respective Participants who made the redemption. Thus, the entirety of float income earned on Participant withdrawals was taken by Fidelity for the benefit of itself or other clients.

34.     As used herein, the term "float" refers to both (a) the interest earned on amounts in the disbursement bank accounts pending the cashing of Participant checks and (b) interest amounts in the FICASH account.

35.     All of the accounts in the processes described above are Deposit Accounts that incurred bank expenses. Because maintaining these accounts was integral to the services Fidelity rendered to the Plans and Plan Participants, such bank expenses were part of Fidelity's ordinary operating expenses for recordkeeping and administering the Plans.

36.     Thus, Fidelity used float income to pay bank expenses that were operating expenses for administering Plan assets – and that should have been paid by Fidelity itself.

37.     By using the float income to pay their own operating expenses, Defendants diverted Plan assets and engaged in self-dealing in violation of ERISA. Defendants had already been paid for such trustee and administration services through revenue sharing arrangements with mutual funds and other sources as provided in its trust agreements.

38.     Following the payment of the Defendants' operating expenses, any remaining float interest was then distributed *pro rata* among various investment funds, rather than to the specific Plan Participants or beneficiaries whose redemptions generated the float income. As a

result, interest generated by the Plans' assets was not used solely for the benefit of the Plans' Participants and beneficiaries.

39.     Under controlling First Circuit ERISA precedent, sums due plan participants "remain plan assets subject to [Fidelity's] fiduciary obligations until actual payment." *Mogel v. Unum Life Ins. Co. of Am.*, 547 F.3d 23, 26 (1st Cir. 2008). Thus, when Fidelity liquidates a participant's holdings in an investment option—a redemption—the cash proceeds remain plan assets "until the check to the beneficiary is actually presented to the plan for payment through the banking system." *Id.* (quotation and citation omitted). Any interest on the cash proceeds, therefore, is also a plan asset. *Id.* at 26 n. 6.

40.     Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." ERISA § 3(21)(A). This definition does not depend on payment or nonpayment of a fee to such a person. 29 C.F.R. § 2510.3-101(a)(2) ("[A]ny person who exercises authority or control respecting the management or disposition of such underlying [plan] assets, and any person who provides investment advice with respect to such assets for a fee . . . is a fiduciary of the investing plan.").

41.     Thus, the Defendants are fiduciaries to the Plans because they exercised authority or control over the Plans' assets in FICASH by directing such assets to be used to pay bank fees and to be invested in various overnight securities. Further, FMTC was the trustee for the accounts and for the Plans.

42.     The Plaintiffs had no knowledge of the Defendants' ERISA breaches and violations until shortly before the institution of these now-consolidated actions.

## VIII.    REMEDIES FOR VIOLATIONS OF ERISA

43.    ERISA § 502(a)(2) provides that a civil action for breach of fiduciary duty for relief under ERISA § 409 may be brought by a participant, beneficiary, or fiduciary of a plan.

44.    ERISA § 409 requires "any person who is a fiduciary who breaches any of the duties imposed upon fiduciaries to make good to such plan any losses to the plan." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate," which is actionable under ERISA § 502(a)(3).

45.    Plaintiffs are participants, beneficiaries or fiduciaries of the Plans and are therefore entitled to bring suit on behalf of the Plans seeking relief from the Defendants in the form of:

> a.    A monetary payment to the Plans to make good to the Plans the loss of benefits to the Plans resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA §§ 409(a) and 502(a)(2);

> b.    Injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(3);

> c.    Disgorgement of profits earned thereon as a result of prohibited transactions;

> d.    Reasonable attorneys' fees and expenses, as provided by ERISA § 502(g), the common fund doctrine, and other applicable law;

> e.    Taxable costs and interest on these amounts, as provided by law; and such other legal and equitable relief as may be just and proper; and

> f.    Such other legal or equitable relief as may be just and proper.

46.    Under ERISA, each Defendant is jointly and severally liable.

## IX.    CLASS ACTION ALLEGATIONS

47.    ERISA §§ 409(a) and 502(a)(2) authorize ERISA plan participants, beneficiaries and fiduciaries to sue in a representative capacity for losses suffered by plans as a result of

breaches of fiduciary duty. Pursuant to that authority, the Plaintiffs bring this action as a class

action under Federal Rule of Civil Procedure 23. The Plaintiffs seek to restore losses to the Plans

for which the Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2).

48.     **Class Definition**. The Plaintiffs bring this action as a class action pursuant to

Rules 23(a), (b)(1), (b)(2), and, in the alternative, (b)(3) of the Federal Rules of Civil Procedure

on behalf of the following Class the "Class"):

> Employee benefit plans covered by the Employee Retirement
> Income Security Act of 1974 subject to Internal Revenue Code
> §§ 401(a), (k), for which Fidelity has served as trustee or service
> provider from February 1, 2007 to the present ("the Class Period").

Excluded from the Class is the ABB PRISM Plan that was the subject of the litigation in

*Tussey v. ABB, Inc.*, *et al.*, Case No. 06-04305-CV-NKL, in the U.S. District Court for the

Western District of Missouri, Central Division.

49.     **Numerosity**. The members of the Class are so numerous that joinder of all

members is impracticable. While the exact number of Class members is unknown to the

Plaintiffs at this time and can only be ascertained through appropriate discovery, the Plaintiffs

believe that the Class includes thousands of Plans throughout the country. Moreover, Fidelity

Trust's website indicates that over 500 clients, with assets in excess of $260 billion, use its

"custom trustee services." *See* http://institutional.fidelity.com.

50.     **Commonality**. The claims of the Plaintiffs and the Class originate from the same

misconduct and violations of ERISA. Proceeding as a class action is particularly appropriate here

because Fidelity uniformly applied its system for processing disbursements for the Plans, and,

therefore, the Defendants' self-dealing in violation of ERISA's prohibited transaction provision

has affected all Plans in the same manner. Furthermore, common questions of law and fact exist

for all members of the Class and predominate over any questions solely affecting individual

members of the Class. The many questions of law and fact common to the Class include:

    a.    Whether the Defendants are fiduciaries under ERISA;

    b.    Whether the Defendants engaged in a prohibited transaction under ERISA § 406(b)(1) by using float for its own purposes to pay or offset bank expenses;

    c.    Whether float is an asset of the Plans;

    d.    Whether the Defendants breached their fiduciary duties by receiving excessive compensation and/or converting Plan assets to their own use;

    e.    Whether the Defendants breached their fiduciary duties by failing to credit float in full to the Plans;

    f.    Whether the Defendants breached their fiduciary duties by diverting to other investors float income that should have been included in the Plans;

    g.    Whether the Defendants' acts proximately caused losses to the Plans;

    h.    Whether the Class is entitled to damages and injunctive relief;

    i.    Whether Defendants' conduct is permitted based upon any prohibited transaction exemption or other authority.

51.    **Typicality.** The claims asserted by the Plaintiffs on behalf of the their plans are

typical of the claims of the members of the Class because the Plaintiffs' plans and the members

of the Class sustained injury arising out of the Defendants' wrongful conduct in breaching their

fiduciary duties and violating ERISA as complained of herein. The Plaintiffs' claims are also

typical of the claims of the members of the Class inasmuch as the Plaintiffs seek relief on behalf

of the Plans pursuant to ERISA § 502(a)(2), and, thus, the Plaintiffs' claims on behalf of the

Plans are not only typical of, but identical to, the claims of Class members. If cases were brought

and prosecuted individually, each member of the Class would be required to prove the same

claims based upon the same facts, pursuant to the same remedial theories, and would be seeking

the same relief.

14

52.     **Adequacy.** The Plaintiffs will fairly and adequately protect the interests of the members of the Class. The Plaintiffs have retained competent counsel with experience in class action and ERISA litigation. The Plaintiffs and the plans they represent have no interests antagonistic to or in conflict with those of the Class.

53.     **Rule 23(b)(1)(A) & (B) Requirements.** Class action status in this action is warranted under Rule 23(b)(1)(A), because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for the Defendants. Class action status is also warranted under Rule 23(b)(1)(B), because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

54.     **Rule 23(b)(2) Requirements.** Certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

55.     **Rule 23(b)(3) Requirements.** Certification under Rule 23(b)(3) is also appropriate because common questions of law and fact clearly predominate over any questions affecting only individual members. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the

Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## X.  CLAIMS FOR RELIEF

### COUNT ONE – BREACH OF FIDUCIARY DUTY

56.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

57.     Interest and income earned from plan assets are themselves plan assets, and, thus, float was a Plan asset.

58.     The Defendants owe to the Plans, their participants and beneficiaries extensive fiduciary duties including, without limitation:

  a. To perform duties with the utmost loyalty and fidelity to the Plans and their participants and beneficiaries, avoiding at all times conflicts of interest, self-interest, and duplicity;

  b. To ensure, at all times, that Plan assets shall be held for the exclusive purposes of providing benefits to Plan Participants and their beneficiaries;

  c. To ensure, at all times, that the Plans avoid prohibited transactions;

  d. To track and account for all transactions involving the Plans and Plan assets so as to ensure that Plan assets are retained, managed, and disbursed in compliance with Plan Documents and ERISA.

59.     The Defendants breached their fiduciary obligations to the Plans by using the float income for themselves to defray their own expenses.

60.     The Defendants also breached their fiduciary obligation of loyalty to the Class by giving float belonging to the Plans to other Fidelity clients.

61.     As a consequence of the Defendants' breaches, the Plans have suffered financial losses and damages equal to the amount of the float income together with any amounts that could have been earned thereon.

62.     Pursuant to ERISA §§ 409 and 502(a), the Defendants are personally liable to make good to the Plans for the losses the Plans experienced as a result of the Defendants' breaches of fiduciary duty.

63.     Pursuant to ERISA § 502(a)(3), the Court should also award equitable relief to the Class.

## COUNT TWO – PROHIBITED TRANSACTIONS

64.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

65.     ERISA § 406(a)(1) provides that a fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." ERISA defines a "party in interest" to include "any fiduciary (including, but not limited to, any . . . trustee)." ERISA § 3(14)(A).

66.     As discussed above, the Defendants were at all relevant times ERISA fiduciaries with respect to the Plans. Thus, each was a "party in interest" pursuant to ERISA § 3(14)(H).

67.     The Defendants' use of the Plans' float income to pay the Defendants' bank fees is a plan transaction within the meaning of ERISA § 406(a)(1).

68.     The Defendants knew or should have known that, by using plan assets to pay the Defendants' bank fees for accounts such as the Depository Account and the REPO Account, they were using Plan assets to indirectly benefit themselves, and each of them was a "party in interest." Accordingly, the Defendants engaged in a prohibited transaction under ERISA § 406(a)(1).

69.     Additionally, ERISA § 406(b)(1) prohibits a fiduciary from dealing with the assets of a plan for its own interest or account.

70.     The float retained by the Defendants, or used to benefit Defendants by payment of their operating expenses, consisted of interest earned from Plan assets. The returns from investing Plan assets in overnight securities are Plan assets, and each Defendant is a fiduciary.

71.     The Defendants violated ERISA § 406(b)(1) by using the float in their own interests by defraying their own administrative expenses.

72.     The Department of Labor's Field Assistance Bulletin 2002-3 indicates that a financial service provider's use of float income for its own benefit constitutes a prohibited transaction under ERISA § 406(b)(1) unless the practice is disclosed and openly bargained-for at the time the service provider is retained, and even then, only where the agreement does not permit the service provider to affect (and in particular increase) the amount of its float compensation. The Defendants here (1) did not disclose the float income, (2) did not negotiate for extra compensation in the form of the float income, or provide the Plans with information sufficient to understand the Defendants' compensation, and (3) had discretion to use the float income to pay themselves excessive compensation. FAB 2002-3, therefore, confirms that the Defendants' actions constitute prohibited transactions under ERISA § 406(b)(1).

73.     As a result of the prohibited transactions engaged in by the Defendants, the Plans suffered losses in the form of the interest income retained by or applied for the benefit of the Defendants and the return the Plans would have realized on that income had it been prudently invested for their benefit by the Defendants.

74.     Pursuant to ERISA §§ 409, 502(a)(2) and 502(a)(3), the Defendants are liable to personally make good to the Plans the damages they sustained.

75.     Pursuant to ERISA § 502(a)(3), the Court should also award equitable relief to the Class.

## COUNT THREE – CO-FIDUCIARY LIABILITY

76.      Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

77.     **Knowledge of a Breach and Failure to Remedy**: ERISA § 405(a)(3) imposes co-fiduciary liability on fiduciary "A" for a fiduciary breach by fiduciary "B" if fiduciary A has knowledge of the breach by fiduciary B, unless fiduciary A makes reasonable efforts under the circumstances to remedy the breach. Each Defendant knew of the breaches by the other fiduciaries and made no reasonable efforts to remedy those breaches.

78.     **Knowing Participation in a Breach**: ERISA § 405(a)(1) imposes liability on fiduciary A for a breach of fiduciary responsibility of fiduciary B with respect to the same plan if fiduciary A participates knowingly in, or knowingly undertakes to conceal, an act or omission of fiduciary B, knowing such act or omission is a breach. As alleged above, each of the Defendants were intimately involved in the process of generating and improperly disbursing the float income, and, thus, knowingly participated in the improper management of that investment by the other Defendants.

79.     **Enabling a Breach**: ERISA § 405(a)(2) imposes liability on fiduciary A if, by failing to comply with ERISA § 404(a)(1) in the administration of the specific responsibilities which give rise to fiduciary status, fiduciary A has enabled fiduciary B to commit a breach. FMTC enabled the breach by engaging FIIOC and FMRC for purposes of effectuating transfers, contributions and distributions from plans.

80.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Class lost millions of dollars of retirement savings.

81.     Pursuant to ERISA §§ 409, 502(a)(2) and 502(a)(3), the Co-Fiduciary Defendants are liable to make good to the Plans for the losses caused by their breaches of fiduciary duty alleged in this Count and to provide other equitable relief as appropriate.

## XI.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     A determination that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiffs as class representatives;

B.     A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.     A Declaration that the Defendants, and each of them, breached ERISA fiduciary duties owed to the Plans;

D.     An Order compelling the Defendants to make good to the Plans all losses resulting from the Defendants' breaches of fiduciary duty and prohibited transactions;

E.     Imposition of a constructive trust on any amounts by which the Defendants were unjustly enriched at the expense of the Plans;

F.     An Order awarding damages to the Plans, with interest as provided by law;

G.     An Order enjoining the Defendants from any further violations of their ERISA fiduciary obligations;

H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.     An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) or as provided by law;

J.      An Order for equitable restitution and other appropriate equitable and injunctive

relief against Defendants; and

K.      Granting such other and further relief as the Court may deem just and proper.

## XII.      **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all claims so triable.

Dated: September 24, 2014

Respectfully submitted,

*/s/ Gregory Y. Porter*

Gregory Y. Porter

Bradford S. Babbitt (BB 566390)
Craig A. Raabe
Elizabeth R. Leong
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, Connecticut 06103-3597
Tel: (860) 275-8200
Fax: (860) 275-8299
Email: bbabbitt@rc.com
        craabe@rc.com
        eleong@rc.com

Robert A. Izard
Mark P. Kindall
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email: mkindall@izardnobel.com
        rizard@izardnobel.com

*Counsel for Columbia Air Services, Inc.*

Thomas G. Shapiro (BB 454680)
Michelle H. Blauner (BB 549049
**SHAPIRO HABER & URMY LLP**
Seaport East
2 Seaport Lane
Boston, MA 02210
Tel: (617) 439-3939
Fax: (617) 439-0134
Email: tshapiro@shulaw.com
        mblauner@shulaw.com

*Counsel for Plaintiffs Patricia Boudreau,*
*Alex Gray, Bobby Negron and Korine Brown*

**BAILEY & GLASSER LLP**
910 17th Street, NW
Suite 800
Washington, DC 20004
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: gporter@baileyglasser.com

Elizabeth A. Ryan
John J. Roddy
**BAILEY & GLASSER LLP**
125 Summer Street
Boston, MA 02110
Tel: (617) 439-6730
Fax: (617) 951-3954
Email: eryan@baileyglasser.com
        jroddy@baileyglasser.com

Todd M. Schneider
Mark T. Johnson
**SCHNEIDER WALLACE COTTRELL**
**KONECKY LLP**
180 Montgomery Street
Suite 2000
San Francisco, CA 94104
Tel: (415) 421-7100
Email: tschneider@schneiderwallace.com
        mjohnson@schneiderwallace.com

Garrett W. Wotkyns
Michael C. Mckay
**SCHNEIDER WALLACE COTTRELL**
**KONECKY LLP**
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Tel: (480) 428-0142
Email: gwotkyns@schneiderwallace.com

*Counsel for Plaintiffs Timothy M. Kelley and*
*Jamie A. Fine*

**CERTIFICATE OF SERVICE**

I hereby certify that on, September 24, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to registered CM/ECF participants.

*/s/ Gregory Y. Porter*
Gregory Y. Porter